**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-CV-00696

WESTPARK CAPITAL, INC.

    **Plaintiff**,

v.

BITTERROOT, LLC,

    **Defendant**.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff WestPark Capital, Inc. ("WestPark"), by and through its undersigned attorneys, states as follows for its Complaint for Declaratory and Injunctive Relief against defendant Bitterroot, LLC ("Bitterroot").

**INTRODUCTION**

1. This action arises out of Bitterroot's improper filing of an arbitration proceeding against WestPark, entitled *Bitterroot LLC v. Newport Coast Securities, Inc., WestPark Capital, Inc., Rubicon Financial, Inc., Joseph Mangiapane, Jr., Kathleen McPherson, and Kristopher Kessler*, FINRA Arbitration No. 16-00867, currently pending before the Financial Industry Regulatory Authority ("FINRA") (the "Arbitration").

2. WestPark seeks a declaratory judgment that it is not a proper respondent in the Arbitration. WestPark further seeks injunctive relief enjoining Bitterroot from proceeding against WestPark in the Arbitration. WestPark has not agreed to arbitrate any disputes with

1

Bitterroot. The FINRA Rules provide for arbitration in specified circumstances when there is a "written agreement" or when requested by a "customer." There is no written arbitration agreement between WestPark and Bitterroot and Bitterroot is not, and never has been, a WestPark "customer." Until Bitterroot sought to add WestPark as a party in the Arbitration, Bitterroot was a complete stranger to WestPark. Because Bitterroot is not WestPark's "customer," Bitterroot has no basis to demand that WestPark arbitrate with Bitterroot.

3. In the FINRA arbitration, Bitterroot erroneously alleges that WestPark is a successor-in-interest to Newport Coast Securities, Inc. ("Newport"), an entity of which Bitterroot was allegedly a "customer." WestPark and Newport entered into an Asset Purchase Agreement, but that Agreement fell apart when Newport violated its broker-dealer net capital requirement and was forced to terminate its FINRA membership. WestPark is not Newport's successor-in-interest.

4. However, even if Bitterroot's successorship allegations are true, which WestPark denies, because Bitterroot was not a "customer" of WestPark *at the time* the allegedly wrongful services were provided, Bitterroot's allegations are legally insufficient to make Bitterroot a "customer" of WestPark. Thus, Bitterroot has no basis to compel WestPark to arbitrate.

## PARTIES

5. WestPark is a Colorado corporation with its principal office in Los Angeles, California. WestPark is, and at all relevant times was, a licensed broker-dealer registered with the U.S. Securities and Exchange Commission ("SEC") and a member of FINRA.

6. Upon information and belief, Bitterroot is a Colorado limited liability company with its principal office in Colorado Springs, Colorado.

2

## JURISDICTION AND VENUE

7. This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331 because the Arbitration includes federal claims. Specifically, Bitterroot alleges violations of Section 17(a) of the Securities Act of 1933, Section 10(b) of the Securities Exchange Act of 1934, and SEC Rule 10b-5.

8. This Court has personal jurisdiction over Bitterroot because this action arises out of Bitterroot's activities, and Bitterroot is a Colorado limited liability company with its principal place of business in Colorado.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), as Bitterroot resides in Colorado and has requested a FINRA arbitration panel in Denver, Colorado.

## GENERAL ALLEGATIONS

### *FINRA Arbitration Rules*

10. FINRA Rule 12200 provides:

Parties must arbitrate a dispute under the Code if:

- Arbitration under the Code is either:

    (1) Required by a written agreement, or

    (2) Requested by the customer;

- The dispute is between a customer and a member or associated person of a member; and

- The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

11. FINRA Rule 0160 defines "customer" in the negative, providing that a customer is not "a broker or dealer." Courts have defined "customer" to mean "one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *Citigroup Global Markets Inc. v. Abbar*, 761 F.3d 268, 275 (2d Cir. 2014). Customer status is determined "as of the time of the events providing the basis for" the claimant's allegations. *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993) (abrogated on other grounds). Thus, the mere fact that a person was a "customer" of a predecessor-in-interest firm does not make the person a "customer" of a successor-in-interest firm. *See, e.g.*, *id.*; *Miller v. Flume*, 139 F.3d 1130, 1135–36 (7th Cir. 1998); *Bensadoun v. Jode-Riat*, 316 F.3d 171, 177 (2d Cir. 2003).

### *Bitterroot Arbitration*

12. On or about March 25, 2016, Bitterroot initiated an arbitration with FINRA Dispute Resolution against Newport entitled *Bitterroot LLC v. Newport Coast Securities, Inc.*, FINRA Arbitration No. 16-00867.

13. Bitterroot's claims against Newport arise out of its $600,000 investment in a Regulation D offering of debentures issued by Insight Real Estate, LLC ("Insight") in 2010.

14. Bitterroot alleges that a former Newport broker, Kathleen McPherson, failed to investigate the Insight debentures before recommending them to Bitterroot, thereby violating federal securities laws. Bitterroot also asserts claims for common law fraud, negligence, violation of the Colorado Securities Act, violation of the Wisconsin Uniform Securities Act, violation of Wisconsin Statute Section 100.18, and violation of the California Corporate Securities Act.

15. Newport never responded to or in any other way answered Bitterroot's Statement of Claim. FINRA has since removed Newport from the arbitration and informed all parties that claims against Newport will move forward in default proceedings.

16. On July 26, 2016, Newport filed FINRA Form BDW, Broker-Dealer Withdrawal, and Newport's FINRA membership was terminated.

17. On November 21, 2016, Bitterroot filed a Motion to Amend and a proposed Amended Statement of Claim that sought to add WestPark as a respondent to the Arbitration, apparently on the grounds that WestPark is the "successor in interest" to Newport.

18. A true and correct copy of the Amended Statement of Claim is attached as **Exhibit 1**.

19. On January 31, 2017, the FINRA Dispute Resolution Panel granted Bitterroot's Motion to Amend.

20. Upon information and belief, Bitterroot seeks to recover from WestPark its $600,000 investment, 8% interest from the date of sale to the present, attorneys' fees, and punitive damages, on the sole theory that WestPark is Newport's "successor in interest."

*WestPark Has Not Agreed to Arbitrate with Bitterroot*
*and Bitterroot Is Not WestPark's Customer*

21. WestPark never agreed to arbitrate any dispute with Bitterroot.

22. There is no written arbitration agreement between Bitterroot and WestPark.

23. Bitterroot never purchased a good or service from WestPark.

24. Bitterroot has never had an account with WestPark.

25. Bitterroot did not have and has never had any account or business relationship with WestPark.

5

26. The sale of the Insight debentures in 2010 to Bitterroot was not a business activity of WestPark.

27. Bitterroot never has been a "customer" of WestPark.

28. Bitterroot named WestPark as a party in the FINRA arbitration because Bitterroot alleges it was a "customer" of Newport and Bitterroot erroneously believes that WestPark is Newport's successor-in-interest.

29. WestPark and Newport entered into an Asset Purchase Agreement, but that Agreement that fell apart when Newport violated its broker-dealer net capital requirement and was forced to terminate its FINRA membership.

30. WestPark hired some of Newport's brokers, who moved their customers' accounts from Newport to WestPark. Kathleen McPherson was not one of those brokers.

31. Furthermore, even if (a) Bitterroot were a "customer" of Newport and (b) WestPark were Newport's successor-in-interest, which WestPark denies, Bitterroot is not a "customer" of WestPark as a matter of law. *See, e.g.*, *Wheat, First Securities, Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993) (abrogated on other grounds); *Miller v. Flume*, 139 F.3d 1130, 1135–36 (7th Cir. 1998); *Bensadoun v. Jode-Riat*, 316 F.3d 171, 177 (2d Cir. 2003).

32. Bitterroot has no basis to compel WestPark to arbitrate.

## CLAIMS FOR RELIEF

### First Claim for Relief – Declaratory Judgment as to Non-Arbitrability

33. All allegations in this Complaint are incorporated herein by this reference.

34. An actual controversy exists between Bitterroot and WestPark regarding whether WestPark agreed to arbitrate.

6

35. WestPark has not agreed to arbitrate the claims that Bitterroot has asserted in the Arbitration.

36. Pursuant to FINRA Rule 12200, WestPark is only required to arbitrate disputes that WestPark has agreed to arbitrate or that are brought by a WestPark "customer." WestPark has not agreed to arbitrate Bitterroot's claim and Bitterroot is not, and never has been, WestPark's "customer."

37. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, WestPark requests a declaratory judgment from the Court that WestPark has not agreed to arbitrate with Bitterroot and Bitterroot is not WestPark's customer.

38. Pursuant to Fed. R. Civ. P. 57, WestPark requests a speedy hearing of this declaratory judgment action.

### Second Claim for Relief – Preliminary and Permanent Injunction

39. All allegations in this Complaint are incorporated herein by this reference.

40. WestPark has not agreed to arbitrate with Bitterroot and Bitterroot is not WestPark's customer.

41. Unless the Court issues an injunction, WestPark would suffer irreparable injury by being forced to expend time and resources arbitrating issues that are not arbitrable and for which any award would not be enforceable.

42. WestPark's threatened injury outweighs any damage an injunction may cause to Bitterroot.

43. If issued, the injunction would not be adverse to the public interest. Rather, the public interest is served by ensuring that a party is "forced to arbitrate only those issues it

7

specifically has agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

44. WestPark has a substantial likelihood of proving that it has not agreed to arbitrate with Bitterroot.

45. WestPark requests that the Court issue a preliminary injunction pursuant to Fed. R. Civ. P. 65, made permanent at a trial on the merits, enjoining Bitterroot from proceeding against WestPark in arbitration.

## PRAYER FOR RELIEF

WHEREFORE, WestPark respectfully requests that the Court:

(1) Issue a preliminary injunction pursuant to Fed. R. Civ. P. 65 enjoining Bitterroot from proceeding against WestPark in arbitration;

(2) Declare that WestPark has not agreed to arbitrate with Bitterroot and that Bitterroot is not WestPark's customer;

(3) Issue a permanent injunction pursuant to Fed. R. Civ. P. 65 enjoining Bitterroot from proceeding against WestPark in arbitration;

(4) Award WestPark its costs and attorneys' fees as allowed by law; and

(5) Grant WestPark such further relief the Court deems proper.

Respectfully submitted this 17th day of March, 2017.

    *S/ Dana L. Eismeier*
Dana L. Eismeier (#14379)
Michael Y. Ley (#43733)
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers' Green Circle, Suite 1000
Greenwood Village, CO  80111
Phone Number:   303-796-2626
Fax Number:      303-796-2777
E-mail:            deismeier@bfwlaw.com
                     mley@bfwlaw.com
**Attorneys for Plaintiff**

    *S/ Michael Y. Ley*
Michael Y. Ley (#43733)
Dana L. Eismeier (#14379)
BURNS, FIGA & WILL, P.C.
6400 S. Fiddlers' Green Circle, Suite 1000
Greenwood Village, CO  80111
Phone Number:   303-796-2626
Fax Number:      303-796-2777
E-mail:            deismeier@bfwlaw.com
                     mley@bfwlaw.com
**Attorneys for Plaintiff**

Plaintiff's Address:
1900 Avenue of the Stars, Suite 310
Los Angeles, CA 90067